The question is, when does a crime end? The rule is statutory construction, and under the normal rules of statutory construction, when the statute we are considering has clear, unambiguous language, then we look at the plain language and the context in which it's used and we give it its ordinary meaning. The two statutes in play are 844-H1, which is the use of fire statute. It's an enhancement statute that adds 10 years to a sentence when the person uses fire to commit a federal crime. The second statute is what I would call the underlying statute, but there are two pieces to this, and that's 2261, which is interstate domestic violence, which outlaws a person who travels in interstate commerce with the intent to kill their spouse and in the course of or as a result of such travel commits a crime of violence against that spouse. The crime of violence at play in this case is murder. So there has been some disagreement in the briefing about what the underlying crime for 844-H1 is. I don't think that really matters because you cannot have interstate domestic violence without a crime of violence. The crime of violence is murder, so what the district court found was that interstate domestic violence can expand the crime of murder beyond what we would call the logical end point. Well, the crime actually is interstate domestic violence. That's what he was convicted of, so the question is whether he used fire to commit interstate domestic violence, and it seems to me your best argument is the interstate domestic violence ended when her life ended, and she was burned after that. Correct, Your Honor. The novel part of this is that no court seems to have addressed the scope of this statute, but the reason I reference murder is because the underlying crime of violence in this case was the murder, which this court in United States v. McCoy in 1983 and then the Supreme Court in some pre-1900 law has said murder ends at the killing of the victim. So by logic, then the interstate... Right. I don't even think we need a case to tell us that when you're dead, you're dead. I think that's where we got hung up in the district court, and if you look at where the district court kind of reached the ruling on this, what we talked about a lot was a continuum, and he found that this interstate domestic violence crime occurred on a continuum. Then during the briefing, I think we got into this question of whether it was a continuing offense, and I believe in the ruling the district court did in fact find it was a continuing offense, and that's what the government has argued. In our reply brief... And now the government relies on this Halim case quite a bit. I'm not sure I'm pronouncing it correctly. What's your response to that? Can you distinguish Halim? So Halim... Halim. I said Halim, but I don't know that any of us are doing it right, but if we say Halim, since that's what I'm used to saying, I don't think it addresses the right question, because what the defendant in Halim was saying is the crime of violence, which in that case was an assault, happened before the interstate commerce. Wasn't there a critical distinction there that the victim was alive? And here the victim died before the use of the fire? I think there are multiple critical distinctions. The first answer to your question is yes, but in Halim particularly, what is happening is the crime of violence occurs and then the travel begins. So what the court was asked to consider was, is there a beginning point to the interstate domestic violence? And I don't take any real issue with Halim, because what the court said is the beginning point was the assault, and it continued through the travel because the assault is, I suppose, continuing. But they were never asked to say when did it end. And the question here is, and your Honor said it at the beginning, and I think you're right, that unfortunately when a murder occurs, that is the end of the crime. And there's not any case law I can find or any theory under the law I can find where we would allow a crime with a definite end point to continue past that end point. What we got into in the district court, what we've argued extensively in the briefing is that there is a Supreme Court case from the 50s that talks about conspiracy. But the reason I think it gives us a good framework is because the court recognizes in that opinion, I think this court and all courts have recognized, conspiracy is the broadest net we use to capture criminal activity. So if you think of conspiracy as the outer parameters of what we would allow courts to consider, those are the ones where we have series of events that usually lead to a conspiracy. But what the Supreme Court said in Grunewald was, after the object of the conspiracy is achieved, the next set of acts that take place solely to cover that up or to, if you will, get away with it, are not part of that crime. They are not part of that conspiracy. So if you take that and apply it logically to a crime like murder, once the murder occurs, anything that happens after that murder is a new set of criminal activity. And there is case law that we didn't really get into because it's a little bit of a side street, but about accessory after the fact and when that would occur. So one of the ways I thought about it in my head was if the acts that had occurred here, the fire, were committed by a person different than Mr. Florentine, but in concert with him, if you will, would that person be chargeable as a principal in interstate domestic violence? And the answer is no. That person would have to be an accessory. Does the record reflect the time lapse between the murder and the burning? It doesn't. I think that that was probably part of the issue with bringing this as a motion to dismiss, that we had to be limited in the amount of factual dispute that came up because we were going to walk ourselves right into a trial. Our position is the government conceded that the murder occurred, there is a time lapse of some time, and there is then the use of fire. Does the government concede where the murder occurred? Do we know what state the murder? And we talked about this in the sentencing, but it would be disingenuous for me to tell you that I established these as facts on the record, but we had made the argument and were prepared to prove that it occurred in South Carolina. And in fact, I think the government in a footnote mentions that there was a Kentucky state capital charge that was then brought in South Carolina because there was a finding in the pretrial investigation that the murder had not occurred in Kentucky. So the Kentucky authorities brought it here. Again, to be fair to the government, I don't think I can stand in front of this court and represent that we established all those as undisputed facts. But what I think we needed to establish for the purpose of the motion to dismiss was that the use of fire occurred after the death of the victim. And I think that that's clear and that answers our question. Because use is, even though this seems like a novel issue, there's a case out of this circuit called Barnett, which says the language in 924C and the language in 844H are more or less identical, but 924C requires a gun and this is a fire. But they say because they're identical you can use the case law for the same interpretive points. So Bailey, which is a case that was a big deal in the 90s when the use of a firearm came about and there was a question about how broad the definition of use was, Bailey in the U.S. Supreme Court kind of narrowed the definition to such an extent that we don't deal with that version of 924C anymore because Congress amended the statute to make it a broader, have a broader target. So what Bailey says, and I think the best definition of use is that they talk about how we give them ordinary meaning in the context of how they're used and there's a line out of Bailey that says use, when we're talking about this firearm, is it is an operative factor in the predicate crime. And that, I think, answers the question for this court that this fire was not an operative factor in the killing of the victim in this case. So whether we call it murder or, you're right, it's accurately called interstate domestic violence, the fire does not operate to accomplish the death of the victim. Because of that, it's a pretty simple question under rules of statutory construction that we don't go any further. Now in the district court we got a little bit hung up and we did go further. And that didn't change, in my opinion, the answer. But I don't know that we get to go any further when the language is not only that clear, but we have very clear Supreme Court precedent telling us what it means and actually resolving a very similar issue where there was a question about how broadly can we define use. And the Supreme Court said you use it in the commission of the crime. It's an operative factor. So what? The district, thank you. The district court judge explicitly stated, is my recollection, at the sentencing that he, that the exact same sentence would have been imposed. So even assuming we were to agree with you, why would we vacate the sentence? So when I look at all the cases where this court has done this, I think they call that the assumed harmless error theory. Almost every single case I looked at that involves a guidelines determination, which I think is very different than whether a statute with a mandatory consecutive minimum applies. The only case that I found where they did not send it back for re-sentencing on a statutory matter, I think thanks to the government cites in their brief and I in my reply brief, I cite where I went into the PACER documents to find out exactly what happened. And in that case, there's multiple counts and let's just say one of those counts he imposed a 30 year sentence and on another count 10 years concurrent but clearly the 30 year didn't get vacated, the 10 year got vacated. So that doesn't have a huge effect on the 30 year sentence. And then there's also a case fairly recently United States v. Lee from earlier this year where there's a statutory enhancement that they did not send back but it was also different because it was a prior conviction and they said there was overwhelming evidence the prior conviction had actually occurred. So there was no real question that they weren't going to be able to go back and challenge that. So if we get into... Well you've got to, you know, the follow along on that question. You have what looks like to me basically the pronouncement of an alternate sentence because the district court says fairly clearly if they had agreed with you and had not applied count 4 for the mandatory consecutive sentence, even if that count had been dismissed and I had simply treated it as relevant conduct, I would have imposed the same sentence as an alternative variance sentence in light of all the facts and circumstances. And if it's later determined that I have not calculated the guidelines properly, I state for the record I would have imposed the same sentence again as an alternative variant sentence in light of the 3558 factors, etc. So it kind of circles back to Judge Berner's question. The district court has given an alternate sentence here and has explained why the district court would do that. So why would we send it back? I'm going to try to answer your question in my remaining time. I've got three points to make, Your Honor. The first one is philosophical. I think there is a serious problem that I have fought against in many appeals unsuccessfully, but the idea that we say we are going to rule a certain way, we're going to rule against you, but even if we didn't rule against you, we would do the same thing. And then now I'm forced on appeal to answer this question, which I don't know what the district court's thought process was necessarily, but I think it's fundamentally unfair that we have this hotly contested legal issue that we then don't, in fact, give you any grounds to go anywhere with. I think as a legal matter, there's a distinct difference between adding 10 years into what would be right now, and if I can answer your question, I'm out of time. There's a within guideline sentence that is what we're faced with right now, assuming that the district court was correct. If the district court was incorrect, then we have a 50% variance, which this court, looking upwards or downwards with that extreme amount, has been, I think, hesitant to allow on anything less than a pretty significant explanation. And the problem that kind of leads to my first point is here, that now we need to argue whether the facts here properly supported a variance, and I don't think they did, because what he essentially says is, this is extreme conduct, but all the facts cited in support of that are actually nothing more than a heartline case of second-degree murder. So I think it's probably, there are times in the guideline cases where that is okay, even though I would still argue against it, because that's a lighter decision, if you will, but not on a statutory consecutive mandatory minimum, of which there are very few. I'm out of time, so I'll have some time for questions. Well, you've got some rebuttal time. Yes, sir. Thank you, Your Honor. All right. Ms. Washington. May it please the Court, Lisa Washington for the United States. This Court should affirm the district court's denial of Mr. Florentine's motion to dismiss Count 4 for failure to state an offense, because his use of fire to burn parts, identifying parts of his wife's body to conceal the fact that he had shot and killed her, was in and of itself part of the continuing offense of interstate domestic violence. The way you just described it sounds like it might be part of an offense of obstruction of justice, because you said to conceal parts of the body. But how is it you can use fire to commit interstate domestic violence when she is already dead after, when the fire is used? Well, I understand that murder is a crime of violence in this particular case, but as the Court knows, interstate domestic violence has alternating crimes of violence. This one happened to end in death. In addition, Your Honor, you're correct, Judge Thacker, that the government relies heavily on Hillam and the domestic violence statute explained in that particular case. In Hillam, the Court recognized both the language of the statute and the purpose of the statute in terms of whether or not . . . Isn't it a key distinction that in Hillam the victim was still alive when she was forced or coerced to travel in interstate commerce? Well, that's what the defendant argued in that case, that it wasn't part of the course of conduct of interstate domestic violence, because the violence occurred prior to travel. The purpose of the interstate domestic violence statute, as the Court recognized in Hillam, was to address abusers who, recognizing the consequences of their actions, their violent acts, take to the highways in order to avoid detection from law enforcement and to hamper state prosecutions of their offenses. Yes, all of this still sounds like obstruction of justice, not an interstate domestic violence charge. The interstate domestic violence resulting in death, how did that offense not end when the death resulted? Because, Your Honor, as I just said, the death happened in this particular case, but the interstate domestic violence contemplates various kinds of violence that do not end  All right, but we're talking about this particular case. The death-resulting language or the element of death resulting in the interstate domestic violence statute, Your Honor, goes to the harm caused. There is no authority for the argument that the murder, the intrastate crime of violence, controls the end or the termination point or the scope of the interstate domestic violence offense. No authority for that. If Mr. Florentine's argument is accepted Well, it almost seems like you're arguing a different crime, whether it's obstruction of justice or interstate domestic violence to a corpse, which is not, I'm not aware of that being a federal crime, but it just doesn't seem to me to make sense that you can have this continuing crime to a corpse. I mean, there are obviously state laws that would apply in that circumstance, but we're talking about a specific federal statute. We are, Your Honor, and the text of that statute in and of itself contemplates a much broader offense than a discrete point-in-time offense like murder is. In the course of, as a district court filed Well, the statute itself suggests that the victim is a spouse, intimate partner, or dating partner. Once the individual is deceased, they are no longer any of the above. It does, Your Honor, but that's not the starting point of the offense. At the start of the offense, the Right, but the fire occurred after the ending point of the defense, when the individual was no longer the spouse. Well, that kind of goes to our argument that it is a continuing offense. It is not a discrete point-in-time offense about when Well, when would it ever, when would it end? How long could he drag her body around the country and then burn it? That is an interesting question, and it's one that concerned the district court. How would we write this if we agree with you? What I would point the court to, and the government realizes that the kidnapping statute under 1201 is a completely different statute, different language. However, the intent in enacting the kidnapping statute for interstate domestic violence was very similar to the intent of Congress in enacting the interstate kidnapping statute under 1201. It was intended to detect and prosecute those individuals who took to the interstate highways in order to make their crimes more difficult to detect and prosecute by state law enforcement. That was the purpose realized or recognized by this court in United States v. Horton. It's a 2003 kidnapping case. It's not cited in the government's brief, but it's very, provides a very good comparator as far as the interstate domestic violence statute is concerned. The Supreme Court has determined that the interstate kidnapping does not end until the victim's body is abandoned. It does, not necessarily abandoned, but set free. That's Rodriguez v. Moreno. In United States v. Zayack out of the Second Circuit, a more recent case in 2014, that court determined that a deceased kidnapping victim, the offense of kidnapping in that case where the victim is killed, does not end until the victim's body is set free. The government believes that in this case, the crime of interstate domestic violence ended when Mr. Florentine buried his wife in the cemetery in Kentucky. Well, let's change the facts a little bit here. Let's assume that the defendant, he kills his wife, goes to the cemetery in Kentucky, but he doesn't burn her then. He just buries her. Then he decides, I need to do something about the evidence, so he goes back and digs her up and then he burns her. Is that still a continuing offense at that point? Well, Your Honor, it's the government's position that once, as I just stated, that once the victim or once the defendant abandons the property, abandons the body, sets the victim free, in the case of death, abandons the property, the continuing offense ends. If I'm going to make the comparison between interstate domestic violence and kidnapping, I'm going to make it consistently. The statute you're referring to, the kidnapping statute, actually says in the statute, regardless of whether the person was alive. Correct, Your Honor. The domestic violence statute doesn't contain that language. It strikes me that the lack of the similar language helps your colleague. Correct, Your Honor. The government realizes that it's a different statute. I'm pointing to the kidnapping statute just to point out that Congress's intent was similar. It shows that if Congress wanted to include facts such as that in this case, it could have done so. It knew how to do so and yet decided not to. Correct, Your Honor. That language was added as a jurisdictional element to determine whether or not, to make it easier on states, on prosecutions, as far as determining whether or not we had the jurisdictional element, did not see fit to require the government to prove the status of the victim at the time the transportation began. It's relevant. Of course it is. I only point to the kidnapping statute to direct the court's attention to the congressional purpose in enacting it. That is what this court recognized in Hillam. The purpose in enacting the interstate domestic violence statute was not solely to punish domestic violence, but it was also to address the situation where abusers or batterers took to the highways to make their crimes less easy to detect. That in and of itself references or indicates an element of concealment. The government's position in this case is that the burning of the victim's body is an act of concealment under Hillam. For that reason, the government believes that the ten-year consecutive sentence under 844 was appropriate. The district court said that it would give the same sentence even if it was incorrect about the use of fire here. I don't understand really why the government is spending so much time on this sort of tortured analysis and interpretation of the statute and not just maybe conceding that and saying the sentence is still the sentence. There was an alternative sentence and that's the end of it. For the reasons found by the district court, the government does believe that interstate domestic violence is a continuing offense. That included the... I mean, I understand the government believing that interstate domestic violence is a continuing offense because it is and it can be in some cases. It has to end sometime. It does, Your Honor, but the crime of violence element is no more important to the offense than any other element. If Mr. Florentine's argument is accepted, then the crime of violence could occur in the offense before interstate transportation even began. That's completely plausible. Right, and that's not a federal crime. Then that would be a state crime if there was no interstate nexus unless the defendant used a firearm and maybe there was a federal... and or he was prohibited from using the firearm. Correct, Your Honor, but more importantly, it would fly in the face of Helm. That's exactly what the defendant argued in Helm, that his violence occurred prior to transportation. That's the argument that Mr. Florentine is similarly making and if that argument is accepted... And she was alive. The violence occurred prior to transportation, but the violence that occurred was a part of the coercion and forcing her to travel in interstate commerce. That's why those matched up to make an interstate nexus appropriate. Your Honor... But there's no similar matching point here. I really would like to hear an argument about why an upward variant sentence of 10 years is... why we shouldn't remand for a full re-sentencing. Your Honor, the district court made it abundantly clear that it would impose the same sentence if it had granted the defendant's motion to dismiss count 4. Did it explain why? It did, Your Honor. Over 9 pages, 9 or 10 pages of the sentencing transcript, the transcript that... the hearing was very lengthy. In 9 or 10 pages, the court discussed the reasons, number one, why it was denying the defendant's motion for a downward departure and only granting the government's motion for an upward variance conditioned on the error or lack thereof as to count 4. Well, the district court at the bottom of 321 and the top part of 322 explains the variant sentence, but to go into Judge Bruner's question, I don't see there where the district court says it's 10 years, 5 years, and here are the parts of 3553 that make me do this. Your Honor, beginning at... Where are the 9 pages you're talking about? Beginning at JA 307 through 317. And does the district court tie that to the variant sentence? The district court does, Your Honor. It starts out by saying, in our society, the taking of a human life, which is about as serious as an offense there is, the defendant's actions after shooting constituted extreme and aggravating conduct that go beyond the heartland of cases like this. He goes on to talk about the deliberate decisions that the defendant made in committing this offense over a course of days. Talks about the egregiousness and the heinous nature of the offense at JA 315. Continues on and says and describes exactly what the defendant did. Talks about the body being secreted and transported across state lines and the calculations that the defendant went through in order to cover up his crime, that is, the shooting, by burning the body. The district court not only found that the burning constituted a desecration, but it was particularly offended by the defendant's doing so and how that affected or deprived the victim's family of being able to bury or, for that matter, based on the burning of the hands and the face, being able to determine or identify her and determine where she was. I see at the bottom of the last paragraph on 316, the district court does reference back to what you're describing. Right. Where the district court said, for those reasons, I do believe that an upward variance to a degree is warranted. Yes, Your Honor. And condition that the only dispute in this case was whether a ten-year consecutive sentence was lawful. When the district court decided that it was going to determine that issue and deny the defendant's motion for dismissal, it had decided that 360 months was appropriate in this particular case. The defendant asked for it, and if it did not believe that 360 months, if it wasn't set on 360 months, it could have taken it off the guideline sentence. Not only did it not agree with the defendant and sentence him to a term of 18 to 22 months, the court actually issued a guideline sentence of mid-range, 240 months imprisonment. There's plenty of evidence in the record, Your Honor, to support the district court, the strongest of which is the district court saying that it would impose the same sentence regardless of the ruling. Right, but in that alternate sentence, there was a significant upward variance, and in order to justify that, the court needed to address specific factors, the 355A factors. And all of the things you listed, are those the 355A factors? Those factors, beginning on page 307, Your Honor, the district court considered were the history and characteristics of the defendant. The government's motion was based on extreme conduct and the aggravating circumstances of the case, but the court also considered the nature of the offense and the seriousness of the offense, as it explained on page 307 of the JA. So page 307 of the JA at the bottom starts with the district court saying that it's going to, with respect to the 3553A factors, that's how it starts, and then it goes on for eight or nine pages, as you say, discussing the 3553A factors and then concluding with, for those reasons, I do believe that an upward variance to a degree is warranted based on the aggravating facts under 3553A, an upward variance is supported. So that supports your argument that the district court did consider all those factors and tie them to the upward variance, I think, right? It did, Your Honor. The government agrees with that. I'm happy to answer any additional questions that the court may have. All right, thank you very much. Thank you, Your Honor. All right, Mr. Kendrick, we have some rebuttal time. So if we assume we agree with you on the issue of when the crime began and ended, what about the argument that the government has set out most recently with respect to the alternate variance sentence and the explanation that it gave? That's the most difficult part of this appeal, Your Honor, and the problem that I have with allowing that to insulate the issues is that you are just going to see that all the time. So in a guidelines world, I think it is not the correct way to view it, but I can understand why you might if the court says, I didn't give him, or I'm going to give him two points for the gun, but, you know, if I didn't give him the two points, I'd probably still give him the 20 months that that guideline enhancement sort of applied to. And that's why there's some 30, 40, 50 cases where this court has the assumed harmless error on guidelines issues. And I think we know based on the body of law we have on advisory guidelines and on how this court views sentencing that that may be something that we, you know, well I have to live with it whether I want to or not, but it may be something that I understand. But this is very different because you have a sentencing range that is statutorily all the sentences. So murder in federal court is zero to life. This was not a death case by the time we got to sentencing, but any sentence would be appropriate. The guidelines begin to play a more important role in evaluating how we handle these cases in a case with that broad of a sentencing range. So second degree murder, and I recognize that I'm often up here probably arguing against the commission's findings and writings of guidelines, but I think second degree murder carries, I think it carries, if I remember correctly, it comes out to 17 to 22 years, 18 to 22 years, something like that, and that's your heartland murder cases. And what Judge Coggins did, or the district court did in this case, was said, you know, this is middle range, the 20 years, and then I'm going to add the 10. I think the concern we have now is that you have this 50% upward variance, which is an upward variance from the middle of the guidelines. It's based on extreme conduct that occurred after the murder, which was a subject of a departure motion, which is kind of a leftover type thing we do from back before the guidelines were advisory, but it still has a role to play, and that was denied. So finding extreme conduct as a departure ground was not given, but then all the variance factors relate to these things we've been talking about, which are not outside the heartland of any murder, basically, that not only did he commit the murder, but he tried to get away with it. And that, you know, I shied away from this quote that I put in one of my motions, because I don't think I understood it and I stopped understanding it, but the Supreme Court talks about how trying to cover up a crime is concomitant since the Abel and Cain murder tried to hide it from the Lord, and I thought, you know, maybe that goes against me, but what I think they're saying is that doesn't create any special, unique world. Every crime involves trying to get away with it, and what happened here, especially when you get into extremity, I don't know, and it's hard sometimes making these arguments, but it's the job we're tasked with, that the extremity after the killing, I think has got to be much different and explained in a different way to take the killing and multiply the sentence by, you know, 50%. And that puts us in this position, that we have essentially raised a valid legal issue that needs to be addressed, because there is no court in the United States that has looked at the use of fire statute under these circumstances and put what I would call the limiting principle on it, that it does not apply after the end of a crime. But then we end up in a situation where it doesn't really matter, because we would allow a court to insulate the legal decisions by saying, well, that was probably a good sentence anyway, and I think the two need to be separated. If that, if they were incorrect in adding the 10 years consecutive to the middle of the guidelines range, then we need to go back and have resentencing. What we don't want to do is take this record and say, well, you were completely wrong, and not completely wrong as in, I mean, there is no law on this, so this was a novel issue as it stood. But to say you didn't rule correctly under the law, but it won't make any real difference. And I get that that is more of a, again, philosophical argument maybe than a legal argument, but we are up here to determine the parameters of criminal law. We have the opportunity to do that in this case. It should have an effect, and if we go back for a full resentencing, and the judge imposes a 30-year sentence on an upper variance, then that may very well be appropriate, it may very well not be. I think the worry is that, you know, in the two minutes I have, I don't want to belabor the court, because I can tell from your questions, you have read the record, but I can tell you that what I see in the joint appendix does not line up with the very large upward variance that this represented historically. When we see variances up, and again, I sometimes get caught up in saying upward, upward or downward. If he had said, you know, I'm going to give him 10 years, period, because of the statute, because the rest of the sentence is zero, I mean, that would be an extreme departure down that you would look at very, very carefully, and it doesn't matter which direction, and I said departure, I mean variance, it doesn't matter which direction the variance goes, it matters how big it is, so I will candidly tell the court that that is my, the one thing I have struggled with the most in this appeal is the fact that he made that alternate variance sentence, which seems to take the legs out of this argument. I think that we should discourage that as a way to avoid tackling these difficult questions, send it back for re-sentencing, and I hope Judge Agee, I did not make a mistake, but I did use my rebuttal time under your assumption, even though I know I can't assume that you agree with me on interstate domestic violence, but I do think our argument is correct. I think there needs to be a limiting principle here that an offense ends at a logical, clear end point, and I think the damage from not doing that to the rest of the law would become extreme. And the last thing I'll say is that kidnapping is the perfect analogy. Congress decided they wanted it to extend past the death of a victim, they wrote it into the law, they did not write it into this one, and under the case we cited in the brief, the Discover Bank case, that silence means something. Thank you. Alright, thank you. We appreciate arguments from both counsel. Mr. Kendrick, we note that you're court-appointed, and the court wants to express its appreciation to you for undertaking the representation here. So I'll ask the clerk to adjourn court for the day, and we'll come down and re-counsel. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court. Thank you. Thank you.
judges: G. Steven Agee, Stephanie D. Thacker, Nicole G. Berner